William Rovekamp, Plaintiff, v. Central Construction Company, a Corporation, Defendant and Third Party Plaintiff-Appellant, v. Hines Construction Company, a Corporation, Third Party Defendant-Appellee.

### Gen. No. 48,965.

First District, Third Division.

January 9, 1964.

Peterson, Lowry, Rall, Barber & Ross, of Chicago (Harold W. Huff, Thomas K. Peterson and William E. Rattner, of counsel), for defendant and third party plaintiff-appellant.

Pretzel, Stouffer, Nolan & Rooney, of Chicago (William P. Nolan, of counsel), for third party defendant-appellee.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

This action originated with a complaint by William Rovekamp against the Central Construction Company to recover damages for personal injuries. Central was a general contractor engaged in building new homes. One of its subcontractors was Hines Construction Company, which had the job of roofing the homes. Rovekamp, an employee of Hines, claimed he was injured when he fell from a scaffold while laying plywood sheeting on a roof.

The Rovekamp complaint was brought under the Structural Work Act (commonly called the "Scaffold Act"), Ill Rev Stats, c 48, §§ 60–69, 1957. It alleged that Central had charge, control and supervision of the construction work; that its duty was to provide safe scaffolds and supports for the scaffolds and to keep them in a safe condition; that it failed in this, and that it was derelict in permitting the scaffolding to be placed in an improper position. The complaint also stated a cause of action for negligence. It did this by charging Central with various specific acts of negligence concerning the supports and the scaffold and by alleging that the plaintiff was in the exercise of due care for his own safety.

Central filed a third party complaint against Hines. It asserted that Central was not guilty of any active negligence or wilful misconduct; that if Rovekamp was injured it was the result of misconduct by Hines; that Hines erected the scaffold and that the scaffold was under Hines' immediate control and supervision. Central claimed, under these circumstances, the right to indemnity from Hines in the event it had to respond in damages to Rovekamp. Hines moved to dismiss the third party complaint on the ground that even if Central proved the facts alleged in its complaint it had no right of action. The motion was sustained. The order of the court stated that under the Structural Work Act, Central was not entitled to indemnity from Hines. This is the order appealed from, the court having found that there was no just reason for delaying an appeal.

█    Insofar as the Rovekamp complaint charged Central with negligence, there can be no question—predicated on the averments of Central's own third party complaint, which stand admitted for the purpose of the motion to dismiss—that Central would have a right of action over against Hines, who it

stated was the party actively at fault in causing any injury suffered by Rovekamp. John Griffiths & Son Co. v. National Fireproofing Co., 310 Ill 331, 141 NE 739; Gulf, M. & O. R. Co. v. Arthur Dixon Transfer Co., 343 Ill App 148, 98 NE2d 783. However, stating a common law action for negligence appears to have been an incidental result, not the purpose, of the Rovekamp complaint. The obvious purpose was to bring a statutory action for violation of the Structural Work Act. The allegations of negligence and due care were superfluous to this action. Although these allegations are stressed in this appeal by Central they were not considered consequential by either Central or Hines in the trial court. The third party complaint and the motion to dismiss were directed to the Act. The sole issue argued before and passed upon by the trial court, was whether a contractor who is accused of having charge of the work which caused a plaintiff's injury can, in turn, claim indemnity from another contractor who it declares was responsible for the injury. And this is the principal issue to be decided by this court. We regard the allegations of negligence and due care, elements not necessary to a cause of action under the Act, as surplusage. Taylor v. Hughes, 17 Ill App2d 138, 149 NE2d 393.

The Structural Work Act has in the last few years been the subject of much attention. It has been accurately stated that: "Although the statute was originally enacted in 1907, and amended slightly only once, problems arising from litigation in Illinois have only in recent years been of major consequence." Strodel, Illinois Scaffold Act Liability, vol 50, IBJ, p 1092, 1962. Difficulty has centered around section 9 of the Act. Section 9 prescribes the responsibility for complying with, and the penalties and liability for those who violate, section 1. The pertinent portions of each are as follows:

444

"§ 1. . . . all scaffolds . . . supports . . . erected or constructed by any person, firm or corporation in this State for the use in the erection . . . of any house, building . . . shall be erected and constructed in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon . . ."

"§ 9. Any owner, contractor or sub-contractor, foreman or other person having charge of the erection, construction . . . of any building . . . or other structure within the provisions of this act, shall comply with all the terms thereof, and any such owner, contractor, subcontractor, foreman or other person violating any of the provisions of this act shall upon conviction thereof be fined not less than $25, nor more than $500 or imprisoned for not less than three months nor more than two years or both fined and imprisoned in the discretion of the court."

. . . .

. . . .

"For any injury to person or property, occasioned by any wilful violations of this act, or wilful failure to comply with any of its provisions, a right of action shall accrue to the party injured, for any direct damages sustained thereby; . . ."

The most important cases interpreting section 9 have been Kennerly v. Shell Oil Co., 13 Ill2d 431, 150 NE2d 134 (1958); Moroni v. Intrusion-Prepakt, Inc., 24 Ill App2d 534, 165 NE2d 346 (1960); Gannon v. Chicago, M., St. P. & P. Ry. Co., 25 Ill App2d 272, 167 NE2d 5 (1960) and Gannon v. Chicago, M., St. P. & P. Ry. Co., 22 Ill2d 305, 175 NE2d 785 (1961). A review

of these cases will be helpful in focusing the issue in the present case.

In Kennerly v. Shell Oil Co., the defendant, Shell, had engaged a contractor to perform work on its property. Kennerly, the plaintiff, an employee of the contractor, fell from a scaffold and was injured. The scaffold had been built by the contractor. One of Shell's defenses was that it did not have charge of the work. The court rejected this defense. It held that section 9 imposed the same responsibility on an owner as on a contractor and that the responsibility of each was nondelegable. The court stated that a knowing violation was the same as a "wilful" one (Schultz v. Henry Ericsson Co., 264 Ill 156, 106 NE 236), that Shell "knew that scaffolds were being used, and it cannot escape the mandatory duty that the statute imposes by closing its eyes to their condition." This construction of section 9 meant that an unsuspecting owner, who might know nothing more about a scaffold than that it was on his premises, could be held liable if the condition or improper use of the scaffold, or of a ladder, or of a support, could have become known to him by the exercise of reasonable care.

Indirect relief from imposition of the guilt-without-fault concept came in Moroni v. Intrusion-Prepakt, Inc. In Moroni this court extended to the Structural Work Act the principle enunciated in Griffiths & Son Co. v. National Fireproofing Co. and Gulf, M. & O. R. Co. v. Arthur Dixon Transfer Co., supra; that one who, without fault on his part, has become subject to tort liability for the wrongful conduct of another is entitled to indemnity from the active and primary wrongdoer. Moroni, the plaintiff, alleged that he sustained injuries when he fell from a scaffold used in construction work on the property of the Gulf, Mobile & Ohio Railroad Company. A third party complaint was filed by the property owner against Moroni's em-

ployer, Intrusion-Prepakt, Inc. The complaint was based on the ground that Intrusion had contracted to do the work and had erected and maintained the scaffold. The appeal was from an order dismissing the third party complaint. Intrusion argued that the duty incumbent upon the owner was derived from the statute and was the same as that of the contractor. This court said:

> "It is true that the duty of both is derived from the statute, but the duty of each is independent of the duty of the other. The liability stems from the act, but the duties as between G. M. & O. and Intrusion are not the same. When G. M. & O. made its contract for the work, Intrusion became the one primarily charged with the duty of looking after the scaffold. G. M. & O. might not escape statutory liability under the Scaffolding Act . . . as interpreted in Kennerly v. Shell Oil Co. . . . but nothing in the act requires it to waive the right to hold the contractor liable under the general principle set forth in the Griffiths and Gulf, M. & O. R. Co. v. Dixon cases."

Direct relief from the Kennerly construction of section 9 was foreshadowed in Gannon v. Chicago, M., St. P. & P. Ry. Co., 25 Ill App2d 272, 167 NE2d 5. In a forthright opinion another division of this court held that the statutory words "having charge of" meant what they said. The facts in the case were identical with those in Kennerly. The defendant-owner, the railroad, engaged a contractor to erect a dock on its premises. Gannon, an employee of the contractor, fell from a scaffold and was injured. The scaffold had been built by the contractor and the erection of the dock was under its control. This court held that the plaintiff could not recover from the owner because the owner was not in charge of the work.

447

Complete relief came from the Kennerly construction when the Supreme Court affirmed the Appellate Court's interpretation of section 9. Gannon v. Chicago, M., St. P. & P. Ry. Co., 22 Ill2d 305, 175 NE2d 785. In modifying Kennerly, the Supreme Court readopted the Kennerly definition of "wilful" but held that a property owner had no absolute liability under the Act; that an owner who exercised no control over the scaffolds and ladders used in the work on its premises and no control over the manner in which the work was done, could not be deemed to have charge of the work.

Despite the Gannon decision there is still difficulty with section 9. In fact, Gannon triggered the issue raised in the present case and, we understand, in many like cases. The question now being asked is whether Gannon changes the rule of the Moroni case. Moroni was decided while the Kennerly view prevailed and it is argued that the rule set forth in Moroni can no longer be logically sustained. The reasoning is that the only parties who can be liable under the Gannon decision are those who have charge of the work; if a defendant is not in charge of the work it will be found not guilty; if a defendant is found guilty it is because the evidence shows that it has committed a knowing and "wilful" violation; if a defendant is a wilful violator, it is asked, what right has it to indemnity? How can there be degrees of fault—active or passive fault—between parties who are wilful? It is also reasoned that inasmuch as the Scaffold Act is penal as well as civil in character, a defendant who violates the statute would be in pari delicto with the party from whom it seeks indemnity.

■■ These arguments are more formidable in appearance than they are in substance. Although Moroni was decided while the Kennerly view of section 9 prevailed, and although we referred to Kennerly in our opinion, we see no reason for a different conclusion because of Gannon. We adhere to our holding

448

that the Illinois rule forbidding contribution between tort-feasors does not apply between parties, when one is the active and primary wrongdoer and the other bears a passive or secondary relationship to the cause of the injury. Although the liability imposed by the Act does not rest upon negligence, there can be degrees of fault among those who, under the Act, are accountable to an injured plaintiff. Who is the more culpable, a party who supervises and coordinates the overall project, or a party who is responsible for the scaffolding and the particular work which produced the injury? Both are in charge of the work, to be sure, but of different phases of the work. Neither can escape liability to the plaintiff—thus the purpose of the Act is accomplished—but the lesser delinquent, if held accountable by the plaintiff, can transfer its statutory liability to the active delinquent, whose dereliction from duty brought about the plaintiff's injury.

The principle set forth in Moroni was extended to the subcontractor-subcontractor relationship in Brown v. Joseph J. Duffy Co., 31 Ill App2d 272, 175 NE2d 277, and to the contractor-subcontractor relationship in Sack v. Arcole Midwest Corp., 33 Ill App2d 344, 179 NE2d 441. In the latter case the trial court directed a verdict for the contractors on their third party complaint after the close of their case when the third party defendant, the subcontractor who was the plaintiff's employer, rested. The subcontractor appealed. The Appellate Court affirmed and its opinion was filed December 1961, six months after Gannon, but the contention that the Gannon decision should modify the Moroni ruling apparently was not argued for it was not mentioned in the opinion; however, it is significant that leave to appeal was denied by the Supreme Court in March 1962 (23 Ill2d 623).

In Brown v. Joseph J. Duffy Co. the suit was against the Duffy Company, the general contractor,

and against H. P. Reger Co., a subcontractor. Reger filed a third party complaint against another subcontractor, Midwest Heat Service, the plaintiff's employer. The trial court dismissed the third party counterclaim. The Appellate Court reversed with directions to overrule the motion to dismiss. In its motion to dismiss Midwest Heat Service raised the pari delicto issue. It alleged that the plaintiff's action was based on the wilful violation of the Scaffold Act by Reger; that if the action was sustained Reger would be in pari delicto with Midwest. The Appellate Court disposed of this argument in these words:

> "Reger denies any part in the construction or use of any scaffolding and maintains that if found guilty it would be on passive negligence on its part and therefore it would not be in pari delicto with Midwest if the latter was held to be the actively negligent cause of the injury. To hold with Midwest we would have to anticipate a finding that Reger was guilty of an active negligent act and was precluded from any right of indemnity. The decision of our court in Moroni v. Intrusion-Prepakt, Inc., 24 Ill App2d 534, holds to the contrary and is controlling."

> . . . .

> "We think that solely because a party is charged with a violation of the Scaffold Act does not per se mean that a finding against it necessarily makes it guilty of active negligence and precludes, therefore, any remedy. This issue can only be determined by a trial on the merits. We hold that the counterclaim states a cause of action over for indemnity."

According to its third party complaint, Central is exposed to statutory liability only because of its technical violation of the Act, whereas Hines was the pri-

mary tort-feasor wholly responsible for William Rove-kamp's injuries. The complaint unquestionably states a good cause of action based on the distinction between active and passive fault. The motion to dismiss should have been denied.

The order dismissing the third party complaint is reversed and the cause is remanded with directions to overrule Hines' motion to dismiss.

Reversed and remanded with directions.

SCHWARTZ, P. J. and McCORMICK, J., concur.