**Shell Oil Company, a Corporation, for the Use of the Travelers Indemnity Company, a Corporation, Plaintiff-Appellee, v. Hercules Construction Company, a Corporation, Defendant-Appellant.**

**Gen. No. 65–116.**

Fifth District.

August 8, 1966.

Goldenhersh & Goldenhersh, of East St. Louis (Michael A. Katz, of counsel), for appellant.

Oehmke, Dunham, Boman & Leskera, of East St. Louis (William C. Dunham, of counsel), for appellee.

CRAVEN, J.

In 1955, the Shell Oil Company erected a number of buildings and improvements at its refinery at Roxana, Illinois. In connection therewith, it issued a purchase order to the defendant, Hercules Construction Company, for certain work and materials. The purchase order or contract contained an indemnification or hold harmless agreement, by the terms of which Hercules agreed to indemnify Shell for injury to or the death of persons arising out of or in connection with the performance of the contract, except where such injury or death resulted from the negligence of Shell without negligence or fault on the part of Hercules.

During the course of performing the work covered by the contract, one Roy Braden, an employee of Hercules, was injured while standing on a scaffold constructed by one of Hercules' employees.

An action for damages under the Structural Work Act (Ill Rev Stats 1965, par 60, et seq., c 48) was filed in Madison County. Both Shell and Hercules were named as defendants, but Hercules was dismissed as a party-defendant. Shell made, or caused to be made, demands on Hercules that the latter defend the action and save Shell harmless pursuant to the indemnification agreement. In fact, three such demands were made. Hercules did not defend.

At the trial, an instruction was given substantially in the language of par 69, c 48, Ill Rev Stats 1955, that for any injury occasioned by any "wilful" violation of the act or by "wilful failure" to comply with the act a right of action would accrue for the damages sustained. Judgment was entered on a verdict for Braden in the amount of $18,500. On appeal, this was affirmed. Braden v. Shell Oil Co., 24 Ill App2d 252, 164 NE2d 235 (1960).

In the course of its opinion, in affirming the judgment, the court found no reversible error in the instructions, and at 254, 255 (164 NE2d at 236) stated:

". . . 'wilful violations' of the Act referred to have been construed to include liability by an employer not only when dangerous conditions are known to him but also when by the exercise of reasonable care the existence of such dangerous condition could have been discovered and known to him (Schultz v. Henry Ericsson Co., 264 Ill 156 [106 NE 236]). In Kennerly v. Shell Oil Co., supra, [13 Ill2d] at page 439 [150 NE2d at page 139], the Court stated that the word 'wilfully' was synonymous with 'knowingly,' and it was not necessary that there should be a reckless disregard of the statutory provision." . . .

Travelers Indemnity Company, the insurer of Shell, paid the judgment, interest, costs and attorneys' fees pursuant to the terms of a comprehensive liability policy then in force. That policy contained what we take to be the usual subrogation clause.

This action by Shell, for the use of Travelers, is to recover from Hercules the amount of the judgment, interest, costs and attorneys' fees. The case was heard on a stipulation of facts, including the record of the Braden personal injury action. Judgment was entered for plaintiff, and the defendant appeals.

The first count of the complaint sought recovery on a common-law indemnity theory asserting the defendant to be the active wrongdoer, whereas, Shell's fault was merely passive. The second count is based upon liability by reason of the contractual indemnification and Travelers' rights under subrogation. If the plaintiff is entitled to recovery on either theory, the judgment must be affirmed.

Hercules contends that Shell must be classed as an active wrongdoer guilty of a wilful violation and, therefore, cannot recover under a theory of active-passive negligence. It is true, under the instructions given in the personal injury action, there was an issue of wilful violation. It does not follow, however, that a finding of liability under the Scaffold Act necessarily precludes indemnification by reason of that fact alone.

██ The theory of active and passive wrongdoing is one whereby tort liability is shifted from a party who is exposed to liability but is only passively or technically guilty of wrongdoing to the one who actively produced the injury.

██ This theory was first announced in John Griffiths & Son Co. v. National Fireproofing Co., 310 Ill 331, 141 NE 739 (1923). This rule has often been repeated, and in Hyten v. Kleffman, 31 Ill App2d 273, 175 NE2d 632 (1961), we find this statement of the rule:

"... in scaffolding cases, the rule forbidding contribution between tort-feasors does not apply between the parties where one is the active and primary wrongdoer and the other bears a passive relationship to the cause of the injury."

Again, in Miller v. DeWitt, Docket No. 39428 (opinion filed March 24, 1966; petition for rehearing pending), the Illinois Supreme Court stated:

"... When a jury could properly find that an injury was directly caused by improper construction methods and techniques used by a contractor, and that the architect was liable only by reason of a failure to stop work on the job, we think that the jury could find that the contractor was an active tort feasor while the architect's fault was merely passive." ...

There are procedural distinctions between this case and Miller v. DeWitt, supra, but we can perceive of no reason to distinguish between the position of the architect in that case and the owner in this case so far as it relates to determination of ultimate liability by reason of active and passive negligence.

The record in this case indicates, and the Appellate Court found, that a board on the scaffold broke because it was rotten and this defect caused the injury. The scaffolding was erected by the defendant. Shell did send an agent to visit the job site at least daily, but no effort was made to inspect the scaffolding. This omission was sufficient, at the time, to find liability under the Scaffold Act as stated in the quoted portion of the Appellate Court opinion. See also Larson v. Commonwealth Edison Co., 33 Ill2d 316, 211 NE2d 247 (1965). As between these parties, it seems clear that Shell was a passive contributor to the injury and does not come within the prohibition forbidding recovery as an active tort-feasor. See also

Moroni v. Intrusion-Prepakt, Inc., 24 Ill App2d 534, 165 NE2d 346 (1960).

■ The indemnification agreement between Shell and Hercules contractually imposed upon Hercules responsibility for this injury. Hercules seems not to deny its responsibility to Shell in this respect but asserts that Travelers cannot recover because the indemnity agreement affords indemnity exclusively to Shell and was not intended to inure to the benefit of Travelers. The point is made that the equities, as between Travelers and Hercules, become equalized when it is shown that Travelers received a premium payment for the risk it assumed. We cannot accept that reasoning.

In Jackson v. First Nat. Bank of Lake Forest, 415 Ill 453, 114 NE2d 721 (1953), the Supreme Court sustained, as not contrary to public policy, agreements exculpating a party from his own negligence unless there was something about the agreement that offended public policy. Many cases since that time have upheld broad indemnity agreements. See Ingram v. New York Cent. R. Co., 30 Ill App2d 455, 175 NE2d 129 (1961) ; Bounougias v. Republic Steel Corp., 277 F2d 726 ; 54 Ill BJ 624, 635. Since, under the indemnification agreement, Hercules has liability to Shell, it follows that, by reason of the subrogation, Travelers is entitled to recover from Hercules. The circuit court of Madison County properly entered judgment for the plaintiff, and that judgment is affirmed.

Judgment affirmed.

TRAPP, P. J. and SMITH, J., concur.