David W. Jones, Plaintiff, v. McDougal-Hartmann Co., a Foreign Corporation, Defendant and Third-Party Plaintiff-Appellant, v. Robert J. Janssen, d/b/a R. J. Janssen Painting and Decorating Company, Third-Party Defendant-Appellee.

Gen. No. 69–8.

Third District.

October 14, 1969.

Rehearing denied December 1, 1969.

Robert C. Strodel, of Peoria, for appellant.

Cassidy, Cassidy, Quinn & Lindholm, and McConnell, Kennedy, McConnell & Morris, of Peoria, for appellee.

STOUDER, P. J.

David Jones commenced this action in the Circuit Court of Peoria County seeking to recover damages for personal injuries from McDougal-Hartmann Company on account of violation of the Structural Work Act. McDougal-Hartmann filed a third-party action against Robert J. Janssen, d/b/a R. J. Janssen Painting and Decorating Company, Jones' employer, seeking recovery from Janssen on the theory of common-law indemnity. For the purpose of trial, the actions were severed and a jury trial of the Jones' claim against McDougal-Hartmann resulted in a verdict in favor of Jones for $50,000. This judgment has been satisfied and we are not concerned with the propriety of this judgment in this appeal. McDougal-Hartmann's third-party action against Janssen in a separate trial by jury, resulted in a not guilty verdict. McDougal-Hartmann's post-trial motions were denied, and this appeal follows. For convenience McDougal-Hartmann, Appellant and Third-Party Plaintiff, will be referred to as Plaintiff, and Janssen, Third-Party Defendant-Appellee, will be referred to as Defendant.

The evidence presented at the trial on the third-party complaint was practically the same evidence presented during the original trial and is substantially undisputed. The plaintiff, a general contractor, entered into a con-

tract with the State of Illinois for the construction of a portion of an interstate freeway in Peoria, Illinois. The project included construction of at least one overpass which required painting, for which work the defendant had submitted a bid. The defendant had worked on other projects of the plaintiff. Plaintiff orally requested that defendant proceed to paint the structural steel on the overpass.

On the morning of November 19, 1963, Jones, a journeyman painter, Winborn, and one Gess, an apprentice painter, met at Janssen's home. Scaffolds, ladders, drop cloths, etc. were loaded into Janssen's truck and he drove the truck, together with the painting crew, to the job site. All of the equipment was owned by Janssen. When they arrived at the job site, Janssen instructed the crew as to what work was to be done and they commenced rigging cables preparatory to the actual painting. Janssen stayed on the job site about half an hour and returned once sometime before noon during the period prior to the occurrence involved. None of the members of the painting crew was designated as foreman.

When the painting crew arrived on the job, a cement finishing crew of plaintiff's was working on a column. The foreman of the cement finishing crew told the painting crew to be sure that the columns were covered with drop cloths so that they would not be spattered with paint. This crew left the job site before noon while the painting crew was still stringing cables for its scaffolds. During the course of the morning, a McDougal-Hartmann truck came along the roadway under the bridge, stopped momentarily, and then proceeded on. No one left the truck or communicated with the painters who at this time were still stringing cables.

Between 2 and 2:30 in the afternoon Jones went from the completed scaffold to a ladder which was leaning against a column. The bottom of the ladder was not braced or held by another person. Jones attempted to kick

the top of the ladder from the column in order to replace a drop cloth which had blown from around the column and in so doing, the ladder twisted causing Jones to fall to the ground, permanently injuring him. As Jones began to descend the ladder, he was warned by painter Winborn not to try to descend the ladder in such a manner and position. Jones told Winborn not to tell him what to do.

In its third-party action, plaintiff sought to recover $50,000 (amount of Jones' judgment) together with attorney's fees for defending the original action against defendant. The jury found the issues in favor of defendant and it is the judgment entered thereon from which plaintiff has appealed. Plaintiff's action is based on its assertion that its violation of the Structural Work Act was merely passive and the defendant's violation thereof was active. Plaintiff's principal argument is that it should be entitled to recover as a matter of law and hence the court erred in failing either to direct a verdict in its favor or to grant its motion for judgment notwithstanding the verdict.

■ John Griffiths & Son Co. v. National Fireproofing Co., 310 Ill 331, 141 NE 739, is a leading case on the subject of indemnity, both contractual and common law. It recognizes that there are certain relationships such as between contractor and subcontractor in the instant case, where the ultimate financial burden of injuries may be shifted to the party deemed most responsible. To avoid the application of the rule of no contribution among joint tort-feasors, common-law indemnity depends on differences in the quality of the conduct of the parties. Chicago & Midland Ry. Co. v. Evans Const. Co., 32 Ill2d 600, 208 NE2d 573. This may well represent a matter of policy depending on the relation involved, and it is difficult to formulate standards applicable to all situations.

■ ■ Miller v. DeWitt, 37 Ill2d 273, 226 NE2d 630, confirms two general principles applicable to indemnity between parties similarly situated as those in the instant case. In the first place, indemnity is not barred because it may result in an employee receiving and an employer paying an amount in excess of that provided in the Workmen's Compensation Act. In the second place, the party seeking indemnity is not barred merely because both parties may have violated the Structural Work Act. The "willfulness" which is an element of any violation of the Structural Work Act, does not prevent the passive wrongdoer from shifting the financial burden to the active wrongdoer.

■ In Rovekamp v. Central Const. Co., 45 Ill App2d 441, 195 NE2d 756 (quoted with approval in Miller v. De Witt, supra), the court stated, "Although the liability imposed by the (Structural Work) Act does not rest upon negligence, there can be degrees of fault among those who, under the Act, are accountable to an injured plaintiff. Who is the more culpable, a party who supervises and coordinates the overall project, or a party who is responsible for the scaffolding and the particular work which produced the injury? Both are in charge of the work, to be sure, but of different phases of the work. Neither can escape liability to the (injured) plaintiff—thus the purpose of the Act is accomplished—but the lesser delinquent, if held accountable by the plaintiff, can transfer its statutory liability to the active delinquent, whose dereliction from duty brought about the plaintiff's injury." See also Moroni v. Intrusion-Prepakt, Inc., 24 Ill App2d 534, 165 NE2d 346. A subcontractor is usually a specialist whose contract ordinarily provides for the accomplishment of a particular result, the means of accomplishing such result being the choice of the subcontractor. Further, the subcontractor ordinarily furnishes the equipment and personnel and such equipment and personnel are under the control, authority and direction of

407

the subcontractor in the performance of the subcontract. With respect to the work the subcontractor has undertaken to perform, he does have a greater responsibility and duty with respect thereto than a contractor exercising general authority over the entire job. Consequently, when the basis of a claim for indemnity arises on account of injuries to third persons which are incident to the performance of a subcontract, and there is no participation by the general contractor in such performance, we believe the subcontractor's conduct is the active wrongdoing thereby requiring indemnity.

In Sack v. Arcole Mid-West Corp., 33 Ill App2d 344, 179 NE2d 441, the court affirmed a directed verdict in favor of the third-party plaintiff (general contractor) against the third-party defendant (subcontractor). In that case the third-party defendant, a plumbing subcontractor, owned, designed and furnished a scaffold with respect to which an employee was injured because the guardrail was improperly and insecurely fastened. The employee recovered for his injuries from the general contractor, who thereupon sought indemnity from the subcontractor. The third-party plaintiff had a superintendent on the job who had seen the scaffold and approved it. The court concluded that the injury resulted from an activity within the sole control and responsibility of the third-party defendant and therefore, the court held the injury to be the result of active misconduct as a matter of law.

We believe the principle of the Sack case is applicable to the facts in the instant case. Defendant argues that the Sack case involves defective equipment, a condition which did not exist in the instant case. We are, however, unable to understand such distinction. Is an improperly fastened guardrail different in kind from an improperly braced ladder? Furthermore, in Sack the subcontractor was not accused of the deliberate or intentional furnishing of a defective scaffold. Rather, his breach of duty was the failure to discover and remedy the unsafe condition.

██ In the instant case, the facts as well as the inferences to be drawn therefrom are undisputed. In our opinion, the only conclusion that can be drawn therefrom is that defendant's misconduct was active, while that of the plaintiff passive.

In our opinion the Circuit Court of Peoria County erred in denying the third party plaintiff's motion for judgment notwithstanding the verdict. Accordingly the judgment of said Court is reversed and remanded with directions that judgment be entered in favor of such third party plaintiff in accord with the views expressed herein.

Judgment reversed and remanded with directions.

ALLOY and RYAN, JJ., concur.