CECIL GADD, JR., Plaintiff, v. JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY et al., Defendants—(TISHMAN CONSTRUCTION COMPANY, Third-Party Plaintiff-Appellee, v. UNITED STATES STEEL CORPORATION, AMERICAN BRIDGE DIVISION, Third-Party Defendant-Appellant.)

(No. 54693;

First District—September 7, 1971.

*Rehearing denied October 6, 1971.*

Hackbert, Rooks, Pitts, Fullagar and Poust, of Chicago, (Harlan L. Hackbert, of counsel,) for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, (John M. Moelmann and D. Kendall Griffith, of counsel,) for appellee.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Third-party defendant, United States Steel Corporation (hereinafter referred to as Steel) appeals from the judgment entered against it and in favor of third-party plaintiff, Tishman Construction Company, upon an action for indemnification.

The initial action was brought to recover damages for personal injuries sustained by the plaintiff, Cecil Gadd, who was an employee of

Steel during the construction of the John Hancock Building in Chicago. The complaint charged violation of the Structural Work Act (Ill. Rev. Stat. 1969, ch. 48, pars. 60, 69) and common-law negligence.

Defendants (third-party plaintiffs) were John Hancock Mutual Life Insurance Company, the owner; Tishman Construction Company, the general contractor; Skidmore, Owings and Merrill, the architects; Paul Keim, Hancock's construction consultant; and Pittsburgh Testing Laboratory, a testing firm employed by Tishman. All defendants, as third-party plaintiffs, filed a third-party complaint against Steel, whose American Bridge Division was the structural steel subcontractor. The third-party complaint was in three counts, Count I alleging active-passive negligence, Count II alleging an express indemnity provision in the Tishman-Steel subcontract, and Count III alleging a breach of implied warranty on the part of Steel to perform in a safe and workmanlike manner. Count II was dismissed on motion of the the third-party plaintiffs.

At the close of plaintiff's evidence, he dismissed both his action as to Keim and the common-law negligence count as to all parties. Additionally, the court granted the motion of Skidmore for a directed verdict. Steel's motions for directed verdict at the close of plaintiff's and third-party plaintiffs' evidence and at the close of all the evidence were denied.

The jury returned a verdict in favor of plaintiff and against Tishman in the amount of $150,000. The jury also returned verdicts in favor of Hancock and Pittsburgh Testing and against plaintiff. On the third-party action the jury returned a verdict in favor of Tishman and against Steel for indemnification.

Steel's post-trial motions were denied and Steel alone appeals from the judgment against it. On appeal Steel contends:

1. Tishman was guilty of an active violation of the Structural Work Act as a matter of law, precluding recovery on Count I.
2. The "Implied Warranty" theory of Count III is not sustained by the law or the evidence.

On November 29, 1967, the structural steel erection on the John Hancock building in Chicago had reached the 66th floor. Plaintiff was employed by Steel as a welder and on that morning he was working with his helper, Thomas Ivone, on the 66th floor.

There was only partial planking on the 66th floor and no planking on those portions of the 65th, 64th and 63rd floors underneath the unplanked portion of the 66th. There was a walkway about three feet wide consisting of three twelve-inch planks about 25-feet long which had been layed across the beams of the 66th floor by Steel who did all the

planking on the structure. An 18 inch space existed between the walkway and the beams of the north perimeter of the building. The walkway had no safety rails nor was there any planking below it for four floors.

Plaintiff's job as a welder consisted of making an initial application of the weld material referred to as a "root pass" which would then be inspected or tested by the structural steel inspector employed by Pittsburgh Testing through use of a magnaflux machine. If the "root pass" was approved, plaintiff would complete the weld by further passes after which it would again be inspected and tested.

Plaintiff worked from a "float" which consisted of a wooden platform, six feet long and four feet wide, suspended by four one-inch ropes which were connected to the four corners of the "float" to about three feet below the top of the beam.

On the morning of November 29, 1967, plaintiff and Ivone carried the "float" to the point where the first weld was to be made at the juncture of a vertical column to a beam on the outer perimeter of the north side at the 66th floor. They then suspended the "float" to the 18 inch space between the walkway and the beam.

Before plaintiff completed his initial "root pass" (estimates varied from 15—20 minutes to 45 minutes) two employees of Tishman, Kaufman and Hayes, at the direction of Kelly, the Pittsburgh Testing inspector, carried the magnaflux testing machine to a place opposite the weld plaintiff was making, and set the magnaflux machine in the center of the walkway. The magnaflux machine was a box-like device, about ten to twelve inches wide and two or three feet long. The machine was serviced by a power cable and had three additional cables about 15 feet long which were used in testing the weld. Both Kaufman and Hayes saw the walkway and the unplanked area on the 66th floor.

After plaintiff completed his "root pass," he watched while the weld was tested and approved. He saw the leads used in the testing put back on the walkway. He then walked past the magnaflux machine on the walkway to the central area on the 66th floor for coffee and warmth at the fire. He again returned to his float past the magnaflux machine and completed the weld.

Plaintiff and Ivone then untied the float and lifted it onto the walkway, placing it on top of the magnaflux machine and coiling the ropes on top of the float. Ivone was north of the float, the direction in which they intended to go. Plaintiff was at the south end. Plaintiff untied his safety line from the beam and when he turned around, Ivone picked up his end of the float carrying it behind his back. Plaintiff picked up his end of the float and Ivone called, "Are you ready," and plaintiff answered "yes." Ivone testified that he called out, "Watch where you are

going" but plaintiff denied this. Plaintiff "took about a step" and then felt something with his foot. As he tried to get his foot loose, the board started shaking. He put the float down and tried to catch hold of the walkway, but fell into the unplanked area. He didn't see what his foot tripped on. None of his welding leads were on the walkway at that time but were still tied to the beam.

Dale Olegaard, another welder's helper, who was working 12 or 15 feet away saw plaintiff and Ivone pick up the float and set it on the magnaflux machine. They untied the lines and coiled them on top of the float. "They started to walk with it and Mr. Gadd tripped in these cables that are attached to the magnaflux machine and first got in that with one foot and got in a welding cable and he spun around, and he went in the hole." On cross-examination he "was sure" that plaintiff tripped over the magnaflux cable first.

In falling, plaintiff's body struck a beam on the 64th floor and landed on the 62nd floor. He sustained serious injuries.

■■ Initially, we find that the judgment in Tishman's favor cannot be sustained on the implied warranty theory as alleged in Count III. In *Wrobel v. Trapani*, 129 Ill.App.2d 306, this court held that the implied warranty theory as set forth in a line of cases beginning with *Ryan Stevadoring Co., Inc. v. Pan-Atlantic Steamship Corp.*, 350 U.S. 124 was inapplicable to a building contractor-subcontractor indemnity action of the kind which is before this court.

Therefore, the remaining issue is whether the judgment in Tishman's favor can be sustained under the theory of an active-passive indemnity as alleged in Count I. Steel contends that Tishman was guilty of an active violation of the Structural Work Act as a matter of law and that the trial court erred in denying Steel's motion for a judgment notwithstanding the verdict.

■■ In *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill.2d 494, 510 the court stated: "In our judgment verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand."

The theory of active-passive indemnity in Structural Work Act cases was first articulated in *Griffiths & Son Co. v. Fireproofing Co.*, 310 Ill. 331, 339 wherein the court stated: "Where one does the act which produces the injury and the other does not join in the act but is thereby exposed to liability and suffers damage the latter may recover against the principal delinquent, and the law will inquire into the real delinquency and place the ultimate cause of the injury. [Cases cited]."

■■  Thus, indemnification for liability under the Act is based upon degrees of fault under the Act. *Rovekamp v. Central Const. Co.*, 45 Ill. App.2d 441.

Steel contends that since Tishman's employees placed the magnaflux machine on the scaffold thereby decreasing the width of the passageway, Tishman was also guilty of an active violation of the Act precluding indemnification. However, Tishman maintains that the active violations of the Act were Steel's failure to plank the completed floors and provide handrails and that Tishman was only passively in violation of the Act by failing to discover and remedy these defects. Tishman further maintains that while the placement of the magnaflux machine on the scaffold in such a manner as to decrease the useable passageway constituted negligence, it did not constitute a violation of the Structural Work Act.

■■  In *Karris v. Goldman*, 118 Ill.App.2d 85, the plaintiff fell from a scaffold after stepping onto the overhang of a mortar plate which was too large for the scaffold as constructed. Plaintiff recovered a verdict of $50,000 from the general contractor who on appeal contended that the placing of ordinary tools and equipment upon a stationary platform could not be construed to constitute an operation of the scaffold as covered by the Act. In affirming the judgment in favor of plaintiff this court stated at pages 89 and 90:

> "The sole test or criterion with which to determine whether the scaffold complies with the Act is not limited to its sturdiness or structural integrity, but it must also be of a size or dimension suitable for the anticipated equipment, tools or devices that are required to be placed thereon for the use of the workmen pursuing their assigned tasks."

> ❋ ❋ ❋

> "The jury could find, for instance, that the use of the mortar plate which was 3 ft. square and weighed between 20 to 30 pounds with a portion thereof overhanging the outermost part of the scaffold, caused the scaffold to become insufficient, unsafe and dangerous."

In the present case Tishman similarly placed necessary equipment on the scaffold. The equipment decreased the passageway on the scaffold. However, plaintiff did not trip due to the decreased passageway but rather, as testified to by Olegaard, plaintiff tripped over the fifteen foot cables which led from the equipment. Olegaard further testified that plaintiff also tripped on a separate welding cable. These cables were a necessary adjunct to the type of work being done on the scaffold. The placement of the cables did not render the scaffold insufficient as did the mortar plate in *Karris*. We further note that there was no showing

158

that the placement of the magnaflux machine itself proximately caused plaintiff's injuries.

■■■ The jury could have reasonably concluded that Tishman's only violation of the Structural Work Act which proximately caused plaintiff's injuries was its failure to discover and remedy the lack of safety rails and planking. The general contractor's failure to discover and remedy defects is considered to be passive conduct under the Act. *O'Leary v. Siegel,* 120 Ill.App.2d 12.

■■ Therefore, we do not find as a matter of law that Tishman was guilty of an active violation of the Act nor do we find that the evidence so overwhelmingly favors Steel that no contrary verdict could stand.

The judgment is affirmed.

Judgment affirmed.

LEIGHTON, P. J., and SCHWARTZ, J., concur.