NATIONAL OATS COMPANY *et al.,* Plaintiffs, *v.* ADOLPH VOLKMAN, Defendant-Appellant-Appellee.—(NATIONAL OATS COMPANY, Plaintiff-Appellee, and EHRSAM, INC., Plaintiff-Appellant.)

(No. 73-348;

Fifth District—June 6, 1975.

*Rehearing denied July 8, 1975.*

KARNS, J., dissenting.

Howard Boman, of Dunham, Boman, Leskera & Churchill, of East St. Louis, for appellant Adolph Volkman.

Francis D. Conner, of Belleville, for appellant Ehrsam, Inc.

Pope and Driemeyer, of East St. Louis (W. Thomas Coghill, Jr., of counsel), for appellee, National Oats Co.

Mr. PRESIDING JUSTICE JONES delivered the opinion of the court:

In a prior action under the Structural Work Act (Ill. Rev. Stat., ch. 48, par. 60 *et seq.*), the next of kin of Carl Volkman, deceased, recovered a judgment against National Oats Company, the owner of premises on which work was being done, and Ehrsam, Inc., the prime contractor for that work. The subcontractor for the work in question was Volkman Brothers Construction Company, a partnership comprised of Carl Volkman, the deceased, and Adolph Volkman. Joining in a common complaint, National Oats Company and Ehrsam, Inc., instituted a third-party action against Adolph Volkman, the surviving partner of Carl Volkman, individually, although the complaint made it clear that Adolph was being sued because of the activity of the Volkman Brothers partnership. In the third-party action National Oats Company recovered, but Ehrsam, Inc., was denied recovery. We have before us an appeal from Ehrsam, Inc., asking for entry of judgment here in its favor or in the alternative for a new trial, and an appeal by Adolph Volkman asking for reversal of the judgment against him or in the alternative for a new trial.

In 1964 National Oats Company contracted with Semmelmeyer Rubber & Supply Co. for the installation of a batch plant at the East St. Louis plant of National Oats Company. Ehrsam, Inc., was employed to design, manufacture, and install the equipment. The batch plant was to be ready for operation on December 1, 1964, and if it was not ready by that date Ehrsam was to be penalized $100 per working day.

Volkman Brothers provided all carpenters, millwrights, sheet metal workers and laborers, together with the tools necessary to perform the installation. The project engineer for Ehrsam, Inc., was assigned the duty of overseeing the installation. No other personnel or equipment of Ehrsam, Inc., were utilized on the job.

Adolph Volkman testified that Volkman Brothers, the partnership, subcontracted the National Oats job from Ehrsam, Inc., that they furnished all the men to do the work and all the tools and equipment used on the job. Further, that as subcontractors they hired a carpenter foreman and a millwright foreman and that he and his brother, Carl, worked as millwrights on the National Oats job as employees of their partnership and as such employees took orders from the millwright foreman.

The plant of National Oats Company consisted of nine buildings designated A through I. The new machinery was installed in building C. The accident occurred in building I, adjacent to building C but connected at the third and fourth story levels with bridges. In building I was located the manlift on which Carl Volkman was killed on January 10, 1965. Erected in 1946, it was a permanent installation of a one-man elevator used to get from floor to floor. It is started by a pull on a rope

on the right side of the manlift. This activates an electric motor which puts into motion an endless belt to which steps and handles are attached. The manlift is stopped by pulling the rope. The holes in the floor through which the manlift passed were 32½ inches in diameter. There was no type of protective device at the bottom of the holes in the floors through which the manlift operated. Carl Volkman was killed on a Sunday. The job had gone beyond the penalty time and work was being done on weekends. At the time Carl Volkman was killed he was working as a carpenter. He was killed under circumstances which indicated that he was using the manlift and was crushed at the underside of the fourth-story floor. He was found on the floor of the third story. A damaged step of the manlift which appeared to be a fresh break was located 4 to 6 feet or more above the level of the third floor.

Near the manlift was a printed sign which stated: "Danger; Keep off manlift; For employees only; Notice: 1. Keep both hands on handle; 2. Face belt at all times; 3. Don't carry large tools in hands or pockets; 4. Don't use manlift to move equipment." Though the plant superintendent for National Oats testified that "employees only" meant National Oats employees and that he would have prohibited use of the lift by anyone else had he been asked, the record shows that the lift was used continuously by Volkman employees. The plant superintendent said that no one in his company told him that the manlift was being used by others but that later he found out that they had been using it continually. Though he testified that if he had been asked he would have prohibited use of the manlift, he had in fact not prohibited its use either by Ehrsam, Inc., or Volkman Brothers. The sole representative of Ehrsam, Inc., on the job, Mr. Hollomon, testified that he knew of the manlift and was aware of its use by the men in the performance of the contract work. He never made any objections or suggestions to the men with regard to their use of the manlift.

We are confronted with three issues: 1. Whether or not a common-law idemnity action lies against Adolph Volkman; 2. Whether National Oats should have recovered in a third-party action under the "active-passive" theory; and, 3. Whether Ehrsam, Inc., should have been denied recovery under the same theory.

The first issue, whether or not a common-law indemnity action will lie against a subcontractor when the prime contractor and the owner have been required under the Structural Work Act to pay damages to an employee of the subcontractor is well settled in Illinois. In *Rovekamp v. Central Construction Co.*, 45 Ill.App.2d 441; 448-49, 195 N.E.2d 756, the court, after discussing the holding in *Moroni v. Intrusion-Prepakt, Inc.*, 24 Ill.App.2d 534, 165 N.E.2d 346, said: "We adhere to our holding

that the Illinois rule forbidding contribution between tort-feasors does not apply between parties, when one is the active and primary wrongdoer and the other bears a passive or secondary relationship to the cause of the injury." In *Miller v. DeWitt*, 37 Ill.2d 273, 226 N.E.2d 630, the Illinois Supreme Court followed the rule established in *Moroni, Rovekamp*, and earlier Illinois appellate court cases.

Against allowing such a third-party action it was argued in *DeWitt* that if a subcontractor had to indemnify a prime contractor or an owner, he would in effect be paying double damages, once to his employee under the Workmen's Compensation Act and again to the third-party plaintiffs as common-law indemnity. But as the court in *DeWitt* pointed out, section 5(b) of the Workmen's Compensation Act protects the subcontracting employer against this contingency. (Ill. Rev. Stat., ch. 48, par. 138.5(b).) This section provides that when an employee recovers from a third party there shall be paid to the employer from the amount recovered any amount which the employer might have paid the employee. As the court pointed out, since recovery under the Structural Work Act is likely to be greater than that recovered under the Workmen's Compensation Act, the employer is made whole while the workman gets the larger amount. Therefore, unless a third-party action is allowed against the employing subcontractor, he could escape paying any damages at all though he may have been the real party at fault. The court in *DeWitt* summarized its consideration of this issue by saying: "However, we feel that the argument in favor of allowing a third party who was not actively negligent to obtain indemnification from an employer who was actively negligent is the better view."

■■ But the real question in this case is not whether the third-party action will lie; that it will under the proper factual circumstances is now well established and universally recognized. We are faced here with the complicating factor that the injured (deceased) party, who obtained recovery under the Structural Work Act, was also the subcontractor since Carl Volkman was a general partner in the firm that held the subcontract. Plaintiffs National Oats and Ehrsam are apparently fully aware of the complications that flow from Carl Volkman's dual relationship in this case, and they have sought to alleviate its impact by bringing their suit for indemnity not against the partnership but against Adolph Volkman individually.

That Adolph Volkman as a partner is liable individually is not open to question. (Ill. Rev. Stat., ch. 106½, par. 15.) Furthermore, the legal nature of the partnership entity entitles Adolph to cast liability for the judgment against him upon the partnership since the partnership was

the subcontractor and it was found actively negligent in the violation of the Structural Work Act. Ill. Rev. Stat., ch. 106½, par. 13.

Under these circumstances Adolph contends that it is a fiction for the National Oats and Ehrsam to bring an action against him. He argues that the injured person is a partner in the subcontracting firm found liable under the Act and that judgment against Adolph is tantamount to a judgment against the injured person and the injured person is thus being compelled to indemnify for his own injury through his partnership liability. If the judgment is permitted to stand it will subvert the intent and purpose of the Structural Work Act by depriving the injured person of the benefits of the Act. *Palier v. Dreis & Krump Manufacturing Co.*, 81 Ill.App.2d 1, 225 N.E.2d 67.

■■■ We have no hesitation in holding Adolph Volkman responsible for the violation of the Act although the injured person was a partner of Adolph and his estate may, or even likely will, share a part of the burden of the judgment in indemnity. This result grants the benefits of the Structural Work Act to the person injured and also ultimately casts responsibility upon the responsible persons pro rata. That Carl's estate may in the partnership dissolution and winding up process stand part of the liability for the violation of the Act will not stop the action over. Such ultimate liability is imposed because Carl was a partner and the legal and financial implications that stem from the partnership entity, not because he was the injured person under the Act nor because he was the party whose negligence constituted the violation of the Act and thus imposed liability upon the partnership. A partner remote from the activity resulting in liability would be no less liable. If this is a fiction, as indeed it seems, then it must be indulged in order to place and spread the ultimate liability among those legally responsible. Thus, although Carl's estate may ultimately share responsibility, so also will Adolph share that responsibility. Acceptance of Adolph's argument would serve to absolve from liability one who was not the injured party but yet responsible for the violation of the Act. The ultimate impression of liability upon the estate of Carl would be no more fictional than Adolph's escape from liability. *Cf. Marcus v. Green*, 13 Ill.App.3d 699, 300 N.E.2d 512.

■■ The defendant next poses the question, "How could it be said that the negligence of National Oats was 'passive' and that of Volkman Brothers 'active' when the manlift was constructed, operated and maintained by National Oats upon their own premises?" The jury found the distinction did exist, and we believe its verdict in that regard is correct. National Oats did not furnish the manlift for the job. It was an integral part of their manufacturing plant and had no connection with the con-

struction project for which Volkman Brothers were responsible. The man-lift was dangerous and limited to the use of the employees of National Oats, and the carrying of tools and equipment (a necessity in a construction project) was prohibited. Warning signs posted by National Oats so indicated. Under the terms of the construction agreement, it was the duty of Volkman Brothers to furnish all tools, equipment and manpower, including scaffolding and hoists required for the construction project. In addition the law imposed an affirmative duty on the Volkman Brothers to furnish employees with contrivances required under the Structural Work Act. (*Louis v. Barenfanger*, 39 Ill.2d 445, 236 N.E.2d 724.) Instead of constructing a hoist for their use in the construction project, or making suitable provisions for moving men and materials to the job site, the Volkmans appropriated to their use an unsafe hoist or manlift in a building other than the job site, without the permission or actual knowledge of National Oats. Under these circumstances the Volkmans' negligence in the violation of the Structural Work Act must be termed "active" and that of National Oats "passive," thus rendering Volkman liable to National Oats for indemnity. *Jones v. McDougal-Hartmann Co.*, 115 Ill. App.2d 403, 253 N.E.2d 581; *Rovekamp v. Central Construction Co.*, 45 Ill.App.2d 441, 195 N.E.2d 756.

■■■ The jury returned a verdict against plaintiff Ehrsam, Inc., and in favor of defendant Adolph Volkman upon the complaint of Ehrsam for indemnity. In our view this verdict was contraindicated by the evidence in the case and under the rule of *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill.2d 494, 229 N.E.2d 504, the trial court was in error in failing to grant the post-trial motion of Ehrsam for judgment *n.o.v.* The position of Ehrsam vis à vis Volkman Brothers is similar to that of National Oats. Ehrsam was the prime contractor on the job. Their subcontract with Volkman Brothers provided that Volkman Brothers were to furnish all tools, equipment and manpower for the performance of the work. Ehrsam had but one supervisor on the job throughout the performance of the work. The province of their supervisor was limited to seeing that the work was completed in the manner called for in the job specifications. Ehrsam was to furnish nothing in connection with the performance of the work. We think Ehrsam stood in exactly the same position with respect to its passive relationship to the violation of the Structural Work Act as National Oats. The only difference is that National Oats was an owner which had been found technically liable under the Structural Work Act and was seeking indemnity, while Ehrsam was a prime contractor, technically liable under the Structural Work Act, seeking indemnity from the subcontractor which was primarily responsible for the performance and conduct of the work. (*Gadd v. John Hancock Mutual*

*Life Insurance Co.*, 5 Ill.App.3d 152, 275 N.E.2d 285.) Since the amount of damages was stipulated and is the same amount which Ehrsam paid the estate of Carl Volkman, deceased, in settlement of the judgment in the original case, it is appropriate that we grant here the motion of plaintiff Ehrsam, Inc., for judgment *n.o.v.* against defendant Adolph Volkman. Accordingly, judgment will be rendered here in favor of Ehrsam, Inc., and against Adolph Volkman in the amount of $23,797.15.

We also have considered defendant's argument with regard to erroneous instructions submitted to the jury and find such argument to be without merit.

Judgment in favor of National Oats affirmed; judgment against Ehrsam, Inc., reversed and judgment in the amount of $23,797.15 rendered in favor of Ehrsam, Inc., against Adolph Volkman.

EBERSPACHER, J., concurs.

Mr. JUSTICE KARNS, dissenting:

I disagree with the opinion of the majority insofar as it sustains the jury's determination that the negligence or fault of National Oats was passive or technical as compared to the fault of Volkman Brothers which was active or primary. I would also disagree with entering judgment *n.o.v.* on behalf of Ehrsam against Volkman Brothers. The determination of the "active-passive" issue is normally a question for the jury to resolve. (*Lambert v. D. J. Velo & Co.*, 131 Ill.App.2d 30, 268 N.E.2d 170 (1971).) However, on these facts, relevant to the determination of the indemnity question, which are not in dispute in any substantial aspect, I would hold that neither National Oats or Ehrsam is entitled to indemnity as a matter of law (*Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill.2d 494, 510, 229 N.E.2d 504, 513 (1967)).

That this hoist or manlift was a dangerous and unsafe contrivance must be said to have been conclusively established by the verdict of the jury in favor of the widow and children of Carl Volkman against National Oats and Ehrsam. That verdict established that each was "in charge of" the project on which Carl Volkman was working at the time of his death. The verdict also established a "wilful" or knowing violation of the Structural Work Act on their part.

The accident did not occur from the use or malfunction of any scaffold, hoist or contrivance constructed or erected for the performance of the construction project at hand. The hoist had been built as a permanent installation in Building I in 1946.

While the manlift was posted in the manner noted, and National Oats' superintendent testified he did not know of its use by Volkman Brothers employees, the uncontradicted testimony was that it was in fact used

continuously by Volkman Brothers' employees in the construction of the project; the project engineer of Ehrsam knew of this use and did nothing to prevent it, and the conclusion is inescapable that National Oats knew or should have known of its use, and, charged with this knowledge did nothing to prevent it. Its superintendent testified that he was at the construction site and lift area daily. It has long been established that liability may be imposed not only when the dangerous condition is known, but when it should have been known in the exercise of reasonable care. Those charged with the duty to comply with the Act may not escape their responsibility by ignoring dangerous scaffolds, hoists or other contrivances. *Kennerly v. Shell Oil Co.*, 13 Ill.2d 431, 150 N.E.2d 134 (1958); *Juliano v. Oravec*, 53 Ill.2d 566, 293 N.E.2d 897 (1973).

We have a situation where all parties knew or should have known, which in law is the equivalent of knowledge, of the use of this dangerous hoist by Volkman Brothers employees. Each was "in charge of" the project so far as this use is concerned as each had the power and authority to prevent this use of an instrumentality not erected for the performance of the construction project in question.

I am not willing to impose liability on Volkman Brothers or Adolph Volkman, partner, because of language in the pleadings of an informal contract, consisting, in part, of correspondence, requiring in general terms Volkman Brothers to provide all tools, equipment and manpower, including scaffolding and hoists. In fact, Volkman Brothers did provide a material hoist for the performance of its contract. It seems to me to misapply the decision in *Louis v. Barenfanger*, 39 Ill.2d 445, 236 N.E.2d 724 (1968), which holds the failure to supply an adequate scaffold actionable under the Structural Work Act, as authority for the proposition that this failure results in active wrongdoing in an action for indemnity brought by one who built and maintained a dangerous manlift or contrivance, as a jury had found here.

Since in my opinion all parties were equally active wrongdoers in failing to prohibit Volkman Brothers' employees use of this unsafe manlift, allowing this verdict of active wrongdoing or fault to stand can only be based on Volkman Brothers' failure to construct or somehow provide a manlift, when there has been no showing that the furnishing of a hoist or manlift was necessary or desirable for the efficient performance of this work. In fact, the evidence is that it was not necessary and that the use of the lift was simply a convenient means of reaching the place where the work was being performed.

I would not extend the doctrine of *Miller v. DeWitt*, 37 Ill.2d 273, 226 N.E.2d 630 (1967), or its progeny this far. Numerous cases hold that the party who built or erected a scaffold is always an active wrongdoer

in the indemnity context (see *Lindner v. Kelso Burnett Electric Co.*, 133 Ill.App.2d 305, 273 N.E.2d 196 (1971); *Shell Oil Co. v. Hercules Construction Co.*, 74 Ill.App.2d 166, 219 N.E.2d 392 (1966)), and that failure to discover a defective condition of a scaffold is merely passive conduct. How can failure to provide an unneeded manlift be called "active" wrongdoing? Admittedly, none of the reported cases are four square with the instant case since we are dealing with a manlift not erected for use in the performance of the construction project at National Oats, but a device used daily in the owner's business and under its control. Liability is thus imposed for Volkman Brothers' failure to provide another and different hoist or lift for what would appear to be the convenience of its employees. If this be wrongdoing, I am not willing to describe it as "active" as against the conduct of National Oats or Ehrsam on these facts. The negligence or fault of the indemnitee and indemnitor must be different in kind in my opinion to ever justify the allowance of indemnity. See *Loehr v. Illinois Bell Telephone Co.*, 21 Ill.App.3d 555, 316 N.E.2d 251 (1974).

I find no authority for this extension of indemnity liability in *Gadd v. John Hancock Mutual Life Insurance Co.*, 5 Ill.App.3d 152, 275 N.E.2d 285 (1971); *Jones v. McDougal-Hartmann Co.*, 115 Ill.App.2d 403, 253 N.E.2d 581 (1969); or *Banks v. Central Hudson Gas & Electric Corp.*, 224 F.2d 631 (2d Cir. 1955), all of which are clearly factually inapposite, as in the instant case, the owner, National Oats, constructed and erected the defective manlift.

I would affirm as to Ehrsam and reverse the judgment in favor of National Oats.