**Edward Wrobel, Plaintiff, v. Bennett P. Trapani, Defendant; Bennett P. Trapani, Third-Party Plaintiff-Appellant, v. John Hillesheim Painting & Decorating Co., Inc., Third-Party Defendant-Appellee.**

**Gen. No. 53,458.**

First District, Fourth Division.

August 19, 1970.

Rehearing denied and opinion modified November 13, 1970.

Jacobs, Williams, and Montgomery, of Chicago (Wyatt Jacobs and C. Barry Montgomery, of counsel), for appellant.

Vogel & Vogel, of Chicago (Robert C. Vogel and Robert Guritz, of counsel), for appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court as modified on denial of petition for rehearing.

Third party plaintiff (Trapani) has appealed from a judgment entered by the trial court at the close of all the evidence, upon the motion of third party defendant (Hillesheim) for a directed verdict. This action was initiated by plaintiff, who is not a party to this appeal, on January 4, 1963. Plaintiff was employed by Hillesheim, who was a painting subcontractor of Trapani, the general contractor in charge of construction of a house. Plaintiff's original complaint alleged that the negligence of Trapani was the proximate cause of the injuries he sustained while on the job. An amended complaint in two counts was then filed by plaintiff adding as an additional party defendant Leo Townsend, a carpenter employed by Trapani, who, it was alleged, lowered the upper sash of a window, causing plaintiff to fall from a ladder on the outside of the house. The second count alleged that Trapani wilfully violated the Structural Work Act. Ill Rev Stats 1961, c 48, §§ 60, 69.

On May 31, 1966, pursuant to leave of court, Trapani filed a third party complaint against Hillesheim, alleging (1) that Trapani's own actions were merely passive, and if he was liable to plaintiff under the Structural Work Act, it was the result of the active conduct of Hillesheim, and (2) that Hillesheim breached its implied contractual obligation to perform the work with reasonable care and in a workmanlike manner. On July 28, 1966, the court dismissed Townsend as a party defendant, and granted leave to plaintiff to file an amended complaint. Filed that day, the second amended complaint contained no negligence count, but did reallege liability of Trapani based on the statute. On July 29, 1966, Trapani entered into a settlement with plaintiff for $45,000, and, on the same day, filed an amended third party complaint against Hillesheim. The terms of this settlement were included

309

in a second amended third party complaint filed on November 20, 1967, and later amended again. Plaintiff's action against Trapani was dismissed on May 10, 1968, pursuant to stipulation.

With regard to the facts of the occurrence, Trapani was retained as general contractor to construct a two-story family dwelling in Mount Prospect. He then entered into a subcontract with Hillesheim to do the painting.

Plaintiff (an employee of Hillesheim) testified that he had placed a ladder against the house and, while standing on it, was sanding and puttying the sill and the sash of a second-floor window. The ladder was adjusted to a 15-foot length and was placed with its base about seven feet from the wall of the house. To the best of his judgment, the bottom of the window was 15 feet above ground level. He stated that while he was working on the outside of the window, Townsend (an employee of Trapani) was working on the inside of the window. During the three or four minutes he was positioned on the ladder prior to the fall, he was applying putty to the upper right-hand corner of the window by using his right hand. He was using his left hand to hold himself in a straight position, by resting it on the top center of the upper sash. He testified that he wasn't sure what rung he was standing on, but his knees were a little lower than the top rung of the ladder. In order to putty the top part of the window, he stepped up one rung, the sash came down about four inches, and he fell backwards off the ladder. He was not in a position to grab hold of any part of the ladder to save himself from falling.

Townsend testified that he was working on the inside of the same window, installing handles on the sash. He had been working there for twenty minutes, during which time he had had a conversation with Wrobel. The sashes on the windows were moved several times during this period. When he had finished work on the lower sash, he pushed it downward. This enabled him to mark the bot-

tom rail of the upper sash to establish a position to insert screws. Then, in order more easily to affix a hardware piece on the bottom rail of the upper sash, he reversed the position of the sashes by raising the lower sash and pushing down on the upper sash so that it came to rest less than half an inch above the window sill, "as far as it would go." He took out his hammer and awl to drive two holes straight down into the rail of the upper sash. He then started to insert the screw "and by pushing down the window went down a half inch."

Right after that, he noticed Wrobel outside with his arms in the air trying to reach for something. It appeared that, just before that, he was reaching with a putty knife in his right hand for the upper right-hand corner of the window. Townsend didn't know where Wrobel's left hand was and, prior to the accident, he didn't see his left hand on the sash at any time. He had been standing at about the same height as Townsend on the inside, with their eyes at the same level. After the fall, Townsend rushed downstairs where Wrobel was lying on the ground, Townsend said he was sorry about it, and Wrobel said not to worry because "it isn't your fault."

Townsend noticed that the ladder, which was standing against the house, was not directly underneath the window but was placed with its right rail even with the left side of the window. The top of the ladder reached only to the bottom edge of the window. He testified that the customary place to position the top of a ladder is near the top of the window. Also, it is usual, when working on the right side of a window, to place the ladder on that side. Further, the customary stance for a worker would be one in which his shoulders would be approximately even with the top rung, with the body between the two rails of the ladder.

Trapani, a carpenter of 20 years' experience, and Donald Stewart, a safety engineer, testified that safety standards in connection with the use of ladders indicate

311

that the highest rung on which a person should stand is the fifth from the top. The position of the body should be between the rails. Trapani testified that the bottom of the window was 12′ 6″ above the ground; and that a ladder fifteen feet long, positioned with its top 12 feet above the ground, would extend 9′ 3″ from the base of the wall. The expert witness testified that this position would not meet acceptable safety standards.

Trapani seeks to have the judgment of the trial court vacated and judgment entered in his favor based upon two theories of recovery. He contends that, as a matter of law, he is entitled to indemnification from Hillesheim either on the theory of active-passive indemnity or implied contractual indemnity. He also contends, in the alternative, that the judgment should be set aside and the cause remanded for a new trial, because the evidence raised questions of fact under both theories which the jury should have been permitted to decide.

Before addressing ourselves to these contentions, however, we believe it necessary to consider the element of "good faith" with regard to the settlement entered into by plaintiff and Trapani. Hillesheim does not question the amount of the settlement, but argues that it was not made in good faith, since a condition of that agreement required plaintiff to file a second amended complaint omitting reference to any allegations of negligence against Trapani. In explanation, Trapani points out that a settlement where negligence is alleged in the complaint, might be construed or inferentially argued (as it could have been in this case if it had gone to the jury) as a tacit admission of negligence on the part of Trapani. See Sleck v. Butler Brothers, 53 Ill App2d 7, 202 NE2d 64. This, he was attempting to avoid, as he was making settlement payment only on the charge of violating the statute and not on the charge of negligence. We find nothing impermissible in such a transaction, as Trapani had the right to have the pleading on which pay-

312

ment was to be made, reflect only the allegation which was the basis for the settlement agreement. See Krambeer v. Canning, 36 Ill App2d 428, 433, 184 NE2d 747. We consider the case of Grummons v. Zollinger, 240 F Supp 63 (cited by Hillesheim), distinguishable on the facts, which in that case strongly indicated bad faith on the part of the defendant in relation not only to the alleged indemnitor but also in relation to the trial court.

■ Trapani raises the related issue that Wrobel's superseded complaint and amended complaint were improperly admitted into evidence over objection. We agree that this constituted serious error in the light of our conclusion above on the issue of good faith. The earlier pleadings themselves are unrelated to the basic issue of indemnification. Their admission into evidence would have been highly prejudicial if the case had gone to the jury.

Trapani has also contended in this court that he was erroneously denied the opportunity to cross-examine or impeach his own witness (Wrobel) when part of his testimony came as a surprise to Trapani's counsel. See Supreme Court Rule 238, Ill Rev Stats 1967, c 110A, § 238. We need not pass on this point, however, because the same element of essential surprise could not be present at any future proceeding.

■■ With respect to Trapani's primary contentions urging reversal of the trial court's judgment, we are confronted initially with the applicability of the Structural Work Act to the instant facts. Sections 1 and 9 of the Act provide that certain enumerated persons, including contractors and subcontractors, have a responsibility to erect ladders in a "safe, suitable and proper manner." Ill Rev Stats 1961, c 48, §§ 60, 69. Whether a party will be held responsible for any injury occasioned by a wilful violation of the Act or a wilful failure to comply with its provisions, depends upon whether he had charge of the work. See Kobus v. Formfit Co., 56 Ill App2d 449, 206 NE2d

477. There is no substantial dispute but what both parties to this appeal were in charge of the work. Hillesheim's employee, Wrobel, erected the ladder from which he fell and sustained injuries. Trapani, as general contractor, was in charge of the overall construction and supervised the manner in which the work was being done.

■ Next, we consider whether there was evidence which, if believed by the trier of fact, would establish a wilful violation of the Act or a wilful failure to comply with its provisions on the part of Hillesheim, and we find that it did. Trapani produced evidence to demonstrate that Wrobel (and through his agency, Hillesheim) violated accepted safety standards in the placement of the ladder: the top of the ladder was beneath, instead of above, the window level; he stood on one of the top rungs of the ladder instead of the fifth from the top; the bottom of the ladder was placed too far away from the wall. All of these factors, when viewed in the light of acceptable standards as testified to at trial, indicate that the ladder had been used in a manner sufficiently unsafe to constitute a wilful violation of the Act by the parties in charge of the work. In so holding, we make no adjudication of the third party claim, since Hillesheim also introduced evidence which, if believed, would establish a violation of the Act on the part of Trapani.

■ Trapani argues that he is entitled to indemnification since his conduct in violation of the Act was merely passive in nature, while that of Hillesheim was active. In litigation under the Structural Work Act, it is well established that the rule forbidding contribution between tort-feasors is not applicable where it is shown that one is an active wrongdoer and the other has but a passive role. E. g., Rovekamp v. Central Const. Co., 45 Ill App2d 441, 195 NE2d 756. Trapani supports his position through evidence demonstrating that Hillesheim (through Wrobel) placed and used the ladder in an un-

safe manner. He argues that his responsibility for the construction project extended merely to general supervision and coordination of the overall project. This, he submits, is sufficient to establish him as the lesser delinquent and Hillesheim as the active delinquent, relying upon Rovekamp, supra, where the court stated at page 449:

> Although the liability imposed by the Act does not rest upon negligence, there can be degrees of fault among those who, under the Act, are accountable to an injured plaintiff. Who is the more culpable, a party who supervises and coordinates the overall project, or a party who is responsible for the scaffolding and the particular work which produced the injury? Both are in charge of the work, to be sure, but of different phases of the work. Neither can escape liability to the plaintiff—thus the purpose of the Act is accomplished—but the lesser delinquent, if held accountable by the plaintiff, can transfer its statutory liability to the active delinquent, whose dereliction from duty brought about the plaintiff's injury.

Thus, the question squarely presented for our review is whether the evidence supports Trapani's active-passive theory of the case. See Miller v. DeWitt, 37 Ill2d 273, 226 NE2d 630; Shell Oil Co. v. Hercules Const. Co., 74 Ill App 2d 166, 219 NE2d 392; Hyten v. Kleffman, 31 Ill App2d 273, 175 NE2d 632. Hillesheim contends that the theory cannot be applied because the act of Townsend, Trapani's employee, was shown to have been a proximate cause of Wrobel's injury. Wrobel testified that he balanced himself while on the ladder by placing his left hand on the top of the window sash, and that Townsend's act of lowering the sash a distance of four inches caused him to fall. Townsend acknowledged that he did lower the sash as he

was working on it, but only by a half inch. He also testified that while he did not know where Wrobel's left hand was at the time, he had not seen it resting on the sash prior to the accident.

■ In our opinion, this conflict in the evidence presented a question of credibility—and, thus, an issue of fact—which could properly have been resolved only by the jury. It relates materially to the factual determination necessary to a correct application of the active-passive rule as a basis for indemnity.

We agree with Trapani that the evidence did not so overwhelmingly favor Hillesheim as to justify the trial court's direction of a verdict for Hillesheim, under the principle of Pedrick v. Peoria & Eastern R. R. Co., 37 Ill2d 494, 229 NE2d 504. We therefore conclude that the judgment must be reversed. We do not, however, agree with Trapani's contention that the evidence was so overwhelming in his favor as to justify reversal with judgment directed against Hillesheim by this court.

Trapani also contends that he is entitled to indemnification from Hillesheim because of the latter's breach of an implied contractual agreement to perform the painting duties with ordinary care and in a workmanlike manner. Trapani asserts that this doctrine, as set forth in Ryan Stevedoring Co., Inc. v. Pan-Atlantic Steamship Corp., 350 US 124, 100 L Ed 133, has been amplified in subsequent maritime cases to permit a shipowner to obtain indemnity from a stevedoring company, notwithstanding the owner's contributory negligence, since the principle of recovery is bottomed in contract rather than tort. Crumady v. The J. H. Fisser, 358 US 423, 3 L Ed2d 413; Italia Soc. v. Ore. Stevedoring Co., 376 US 315, 321, 11 L Ed 732. See, however, Weyerhaeuser S. S. Co. v. Nacirema Co., 355 US 563, 567, 2 L Ed 491, where the court said that a substandard performance of his contract by the stevedore which led to foreseeable liability of the shipowner, would

entitle the latter to indemnity "absent conduct on its part sufficient to preclude recovery."

 We believe that the line of cases beginning with Ryan are inapplicable to a building contractor-subcontractor indemnity action of the kind which is before this court. We are supported in this conclusion by the most recent of these maritime decisions (Italia Soc., supra, at page 324), where Mr. Justice White, speaking for the court, stated:

> Both sides press upon us their interpretation of the law in regard to the scope of warranties in non-sales contracts, such as contracts of bailment and service agreements. But we deal here with a suit for indemnification based upon a maritime contract, governed by federal law, American Stevedores, Inc. v. Porello, supra, in an area where rather special rules governing the obligations and liability of ship-owners prevail, rules that are designed to minimize the hazards encountered by seamen, to compensate seamen for the accidents that inevitably occur, and to minimize the likelihood of such accidents.

Trapani argues that "a majority of jurisdictions, including Illinois, have applied the 'Ryan Doctrine' to non-maritime cases," citing Moroni v. Intrusion-Prepakt, Inc., 24 Ill App2d 534, 165 NE2d 346; Blaszak v. Union Tank Car Co., 37 Ill App2d 12, 184 NE2d 808; and Parsons v. Kuhne-Simmons Co., Inc., 76 Ill App2d 121, 221 NE2d 168. We find this conclusion to be unwarranted. The reference to the Ryan line of cases occurred only in Moroni, supra, and then only to state the proposition that those enumerated cases have recognized an implied indemnity obligation based upon a duty to perform the contract in a reasonably safe manner. The case did not deal with the possibility of recovery by an indemnitee despite his own negligence or misconduct. No Illinois case has ex-

pressly applied the rules of the Ryan line of decisions to cases arising under the Structural Work Act. We are of the opinion that the maritime cases are of a different genre from the scaffolding cases and for this reason operate on a separate and distinct set of principles.

We take note that under general indemnity principles of this state, when there exists a written contract of indemnity, it will not be construed to indemnify against the indemnitee's own negligence unless there is a clear expression of intention to that effect, and then such a contract is subject to strict construction. De Tienne v. S. N. Nielsen Co., 45 Ill App2d 231, 195 NE2d 240; ILP, Indemnity, § 6 and cases there cited; see also 13 Am Jur2d, Building, Etc. Contracts, § 141.

In Bella Kay Bldg. Corp. v. City of Chicago, 58 Ill App2d 230, 208 NE2d 60, where a written contract of indemnification existed, the court inquired into the relative negligence of the parties, and found that, while the indemnitee may have been passively negligent, the indemnitor was the active tort-feasor, so the indemnitee was permitted to recover. Also, in cases applying the theory of implied contractual indemnity, courts of this state have, at the same time, incorporated therein the criteria of active-passive negligence to determine the right to indemnity. Sack v. Arcole Midwest Corp., 33 Ill App2d 344, 347, 179 NE2d 441; Gulf, M. & O. R. Co. v. Arthur Dixon Transfer Co., 343 Ill App 148, 98 NE2d 783. The court in Sack stated its position as follows:

> In the absence of an express provision clearly requiring indemnity against one's active negligence, there is no right to indemnity, express or implied, by an active tort-feasor.

In Moroni, supra, the court found that the facts pleaded by the indemnitee raised a duty and showed a failure to

perform by the indemnitor, and that this implicit charge of negligence entitled indemnitee to recover.

While the opinions in these cases may be subject to the criticism that they employ a mixture of terms from contract and tort law, they are, nevertheless, readily understandable and possible of application. Adhering strictly to contract principles, it may properly be said that an indemnitee cannot obtain redress if his own conduct is sufficient to preclude recovery. But recognition of that rule still leaves us without guidelines necessary to determine the character of such conduct. We believe that the borrowing of the "active-passive negligence" concept from tort law is quite useful in the situation presented by the case now before us. While not satisfying the legal purist, it does, by fortunate accident, make available a substantial body of case law which deals with the same— or practically the same—facts of conduct which will, or will not, permit recovery.

We conclude that under the facts and circumstances of this particular case, evidence in a new trial which would determine the rights of the parties under a theory of implied contractual indemnification would necessarily produce the same result under the established rules of active and passive negligence. Our comments, above, on the evidence concerning the active-passive negligence question apply equally, therefore, to the implied contract contention. There remains an issue of fact to be determined.

Accordingly, the judgment is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

STAMOS, P. J. and DRUCKER, J., concur.