J. L. SIMMONS CO., INC., Plaintiff-Appellee, Cross-Appellant,

v.

The FIDELITY AND CASUALTY CO., Defendant-Appellant, Cross-Appellee.

Nos. 72–1163, 72–1164.

United States Court of Appeals, Seventh Circuit.

Argued April 4, 1973.

Decided Jan. 3, 1975.

Rehearing Denied Feb. 25, 1975.

Walter W. Ross, Jr., Robert S. Milnikel, Chicago, Ill., for J. L. Simmons.

James T. Ferrini, Chicago, Ill., for Fidelity and Casualty Co.

Before CLARK, Associate Justice *, FAIRCHILD, Chief Judge, and PELL, Circuit Judge.

FAIRCHILD, Chief Judge.

This is an appeal by the defendant, The Fidelity and Casualty Company of New York (Fidelity) from judgment in favor of the plaintiff, J. L. Simmons Company, Inc. (Simmons). Jurisdiction is founded on diversity of citizenship. The parties accept Illinois law as controlling substantive questions.

Simmons, a construction contractor, brought this action on a policy of insurance issued to it by Fidelity alleging that Fidelity's refusal to defend certain actions brought against Simmons was a breach of the policy and rendered Fidelity liable to Simmons for sums paid in settlement of those actions and for the costs of defense. The district court granted plaintiff Simmons' motion for summary judgment and, after further proceedings, awarded damages, but refused to include in the total any interest on the money Simmons had paid out from the date on which it was advanced, in April of 1969, to the date of judgment, in December of 1971. Fidelity appeals from the judgment in favor of Simmons, and Simmons cross-appeals from the denial of interest.

* Associate Justice Tom C. Clark, United States Supreme Court, Retired, is sitting by designation.

Fidelity issued a Comprehensive General Liability Policy to Simmons. While the policy was in force, Cossie Griffin, a bricklayer employed by Simmons, suffered fatal injuries while working on the construction of a hospital for An Association of Franciscan Sisters of the Sacred Heart (Owners). An action for damages was brought in state court by Griffin's heirs against the Owners and Architects predicated upon alleged violations of the Illinois Structural Work Act, Ill.Rev. Stats., Ch. 48, secs. 60–69.

As a result of the Griffin suit against the Owners and Architects, each in turn sued Simmons. The Architects filed a third-party action against Simmons seeking indemnity for all liability which the Architects might incur in the primary action. The complaint alleged that their liability, if any, to the plaintiffs would be a result of the active misconduct of Simmons in failing to carry out its contractual responsibilities and denied any active misconduct by the Architects. The Owners' counterclaim against Simmons set forth two counts. One count was similar to the complaint of the Architects. The other count set forth provisions of the construction contract in which Simmons promised to furnish barricades and scaffolding as required by the state code, to exercise precaution for the protection of persons and property, and to observe the safety provisions of applicable laws and codes. The count further alleged that Simmons had impliedly promised to perform the work in a good and workman-like manner; and alleged the Owners' liability in the Griffin action, if any, could only be the result of breach of one or more of the express or implied provisions of the construction contract.

Simmons tendered the defense of these actions to Fidelity, who refused to defend on the ground that the insurance policy did not cover these claims. The third-party actions were dismissed and the defense of the Owners and Architects was assumed by Simmons, due notice first having been given to Fidelity. During the trial of the Griffin action. a settlement of the claims was made, also after notice and a demand to pay the settlement, which Fidelity refused.

Count I of Simmons' complaint was predicated on the theory that the liability asserted by the Owners and Architects against Simmons was liability assumed under a written contract and therefore included under Coverage Y of an endorsement on the Fidelity policy.

The policy was entitled "Comprehensive General Liability Policy." Coverage A, providing insurance for liability because of bodily injuries and death, generally, was inapplicable to liability because of Griffin's injuries and death since he was injured in the course of his employment, and liability for such injury and death was excluded from Coverage A by Exclusion (g).

There had been added to the policy, however, a "Contractual Liability Coverage Endorsement." Coverage Y—"Contractual Bodily Injury Liability" was an agreement "To pay on behalf of the insured all sums which the insured, by reason of the liability assumed by him under any written contract designated in the schedule below, shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person and caused by accident."

There was no schedule designating a written contract. The requirement of such designation was obviated by a further agreement that the "Contractual Liability Coverage Endorsement" shall apply to "any other contract, other than those defined in the policy, whether or not said contract is described in the endorsement." It was further agreed that, although not a condition precedent to coverage, "The insured represents that it will notify the company of all written contracts which it may execute with any person—with full particulars thereof, *and an exact transcript of each indemnity provision set forth therewith.*" The phrasing we have italicized at least suggests that the assumption of liability to be covered was expected to be found in

some portion of a written contract identifiable as an indemnity provision.

■ The parties agree that if the pleadings in an action against the insured disclose, potentially, a case within the coverage of the policy, the insurer must defend, and unjustified refusal renders the insurer liable for the amount of the settlement and expenses incurred in defense. See Sims v. Illinois National Casualty Co., 43 Ill.App.2d 184, 193 N.E.2d 123, 127 (1963). For present purposes, we must inquire whether the liability asserted in the counterclaim against Simmons could be said to be liability assumed by Simmons under a written contract.

■ The only written contract is the contract for construction of the hospital. It contained no provision whereby Simmons expressly assumed, or promised to pay, hold the Owners harmless from, or indemnify the Owners on account of any liability arising out of violation of the Structural Work Act. Hence, if the insurance policy contemplated only an express assumption of another's liability, or an express agreement to indemnify, neither is present. We do observe that it is at least a natural reading of the policy provision, if not the most natural reading, that an assumption of another's liability under a contract, in order to be covered, must be effected by some identifiable provision purporting to be an assumption of liability, or a promise to indemnify or hold harmless from liability. Nevertheless, the policy does not contain the word "express" and insurance contracts are to be construed in favor of the insured.

Assuming, as we must in this case because of Fidelity's refusal to defend, that Griffin's injury and death resulted from a violation of the Structural Work Act for which the Owners and Architects were each liable, and for which Simmons would have been liable if the injury had occurred to someone other than a Simmons employee, and that, under applicable Illinois law, Simmons was liable to indemnify the Owners and Architects, did such liability constitute liability assumed by Simmons under the contract?[1]

The district court concluded that an implied assumption of liability was sufficient and that Simmons' obligation, by reason of its contract, to indemnify the Owners (if not the Architects) constituted such assumption of liability. The court reasoned, in part, "that the Illinois courts do imply into contracts between a building contractor and a building owner an assumption of liability by the contractor that obligates him to indemnify the owner if the latter becomes liable to a third party because the former breached his duty to abide by the scaffolding act. We deem it immaterial that the Illinois courts may relieve the contractor of this contractual liability if the owners may have been actively involved with the contractor in the default." In any event, the court thought that Simmons' express agreement to furnish barricades and scaffolding as required by the state code, and to observe the safety provisions of the laws implied an obligation to indemnify the Owners for liability arising from its failure to furnish such barricades and scaffolding.

As pointed out by the district court, most of the cases construing insurance

1. The Structural Work Act provides in part:

"All scaffolds . . . for the use in the erection . . . of any . . . building . . . shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under or by the same . . ." S.H.A. Ch. 48, § 60.

"Any owner, contractor, sub-contractor, foreman or other person having charge of the erection, construction . . . of any building . . . within the provisions of this act, shall comply with all the terms thereof . . . .

"For any injury to person or property, occasioned by any wilful violations of this act, or wilful failure to comply with any of its provisions, a right of action shall accrue to the party injured . . . .," and to widow, lineal heirs or dependents, in case of death. S.H.A. Ch. 48, § 69.

policy language concerning liability assumed by the insured under a contract deal with an exclusion of such liability from what is often called general liability coverage rather than a description of contractual liability coverage, as is present here. They do appear to support several principles:

a. Where the Insured had a contract with Other Party to perform work, and, by reason of Insured's act or omission in the course of performing it, became liable for injury to the person or property of Injured Party, and the Insurance Policy covered liability imposed on the Insured by law, but excluded liability assumed by the Insured under contract, Insured's liability to Insured Party was not assumed by Insured under contract even though it arose out of an act or omission in the performance of or governed by a contract. Therefore such liability was not excluded and was covered. Larsen v. General Cas. of Wisconsin, 99 F.Supp. 300 (D.Minn.1951), aff'd General Cas. of Wisconsin v. Larson, 196 F.2d 170, 174 (8th Cir. 1952); American Casualty Company v. Timmons, 352 F.2d 563, 568 (6th Cir. 1965); Lumbermens Mutual Cas. Co. v. Town of Pound Ridge, 362 F.2d 430, 434 (2d Cir. 1966); Weeg v. Iowa Mutual Ins. Co., 82 S.D. 104, 141 N.W.2d 913 (1966). Where the Insurance Policy covered only liability assumed by the Insured under contract, it would be consistent in an otherwise similar situation to decide that Insured's liability to Injured Party was not covered.

b. Where the Insured had a contract with Other Party to perform work; by reason of Insured's act or omission in the course of performing it, the Insured and Other Party each became liable for injury to the person or property of Injured Party; Injured Party collected from Other Party; because of a rule of policy, such a comparison between active and passive fault, Insured was required to indemnify Other Party; and the Insurance Policy covered liability imposed on the Insured by law, but excluded liability assumed by the Insured under contract, Insured's liability to indemnify Other Party was not a liability assumed by Insured under contract even though the liability to Injured Party and the liability to indemnify arose out of an act or omission in the performance of or governed by a contract. Board of Trade Livery Co. v. Georgia Casualty Ins. Co., 160 Minn. 490, 200 N.W. 633 (1924). Where the Insurance Policy only covered liability assumed by the Insured under contract, it would be consistent in an otherwise similar situation to decide that Insured's liability was not covered.

c. Under the same facts as b, except that in addition Insured's contract with Other Party included an express promise by Insured to indemnify Other Party from liability growing out of acts or omissions of Insured, the express promise added nothing to the Insured's liability. The contractual liability exclusion clause was not applicable and the liability was covered. United States Fidelity & Guaranty Co. v. Virginia Eng. Co., 213 F.2d 109, A.L.R.2d, Annotated, 63 A.L.R.2d 1122.

The rationale may well be that where the facts are such that an Insured's liability to indemnify exists on one theory as well as another (one being liability imposed by law and the other being liability assumed by contract) the Insured is entitled to choose the theory which is to his advantage with respect to insurance coverage. Such liability would not be excluded by a clause excluding liability assumed under contract, but would be included in coverage of liability so assumed.

We are aware of one case involving a policy provision for coverage of liability assumed by the Insured under a contract. In Haugan v. Home Indemnity Company, 86 S.D. 406, 197 N.W.2d 18 (1972), Insured built a building pursuant to contract with Owner. Owner sued Insured for a defect in the building, claiming a failure to perform in a proper and workman-like manner. The court said, p. 23, "Breach of an implied warranty is not a contractual assumption of liability. The coverage under this section of the policies applies only to an

assumption of another's liability. This contemplates an express contractual assumption of another's potential liability by an agreement to indemnify or hold another harmless for an obligation not otherwise imposed by law." This pronouncement is somewhat similar to proposition a, stated above, although the case did not involve an act or omission of the Insured generating liability for the injury of a third party.

An Illinois Appellate Court decision involved coverage of "all sums which the insured shall become legally obligated to pay or the liability of others assumed by him under contract for damages" because of bodily injury and death, excluding, "except with respect to liability of others assumed by the insured, under contract," bodily injury or death of Insured's employee. Tiffiny Co. v. General Acc. F. & L. Assur. Corp., Ltd., 12 Ill. App.3d 597, 299 N.E.2d 378 (1973).

Although there are statements supporting the proposition that in Illinois a right to indemnify may be implied from a construction contract, we view the statements as dicta, since the court emphasized that the policy required only assumption of liability under a contract which was not required to be express or written, that the contractor insisted on a "Certificate of Insurance for scaffolding, to be issued before Tiffiny could start," and "the admissions of the defendant," apparently that the policy in question and another policy "dovetail and cover all claims for either express or implied indemnity arising out of injury to an employee."

Although this decision comes from an Illinois court, it does not demonstrate, on close reading, a principle controlling our case, without several of the facts relied upon in Tiffiny, including, in the policy before us, a reference to a written contract.

Three decisions involve coverage of Insured's liability because of bodily injury, subject to an exclusion of injury to an employee of Insured arising in the course of employment, but with an exception of liability assumed by the Insured under contract.

In Indemnity Ins. Co. v. California Stevedore & Ballast Co., 307 F.2d 513 (9th Cir. 1962), the Injured Parties were longshoremen employees of Insured, who was a contracting stevedore. The injuries occurred aboard a vessel while stevedore services were being performed. Injured Parties sued the Shipowner under the Longshoreman's Act. The Shipowner sued the Insured, alleging that Insured had agreed to indemnify the Shipowner for any liability caused by the Insured's failure to perform workmanlike services. There was a written contract between the Insured and the Shipowner. Although it did not contain an express idemnity agreement, an agreement to indemnify was deemed to have been implied in fact. The court decided that under the federal law applicable to the contract between the Insured and the Shipowner, the Insured's warrant to perform services in a workman-like manner was the essence of the contract; that therefore Insured's liability to the Shipowner was assumed under a written contract; and that the liability so assumed was excepted from the exclusion, and therefore covered. The decision in *Indemnity* was followed in Zidell v. Travelers Indemnity Company, 264 F.Supp. 496 (D.Oregon 1967).

In Kipka v. Chicago & Northwestern Railway Company, 289 F.Supp. 750 (D.Minn. 1968), the Injured Party was an employee of Insured, injured while loading cases of beer into a boxcar furnished by Santa Fe Railway. Injured Party sued Santa Fe and Santa Fe sued Insured for Indemnification. The court concluded that the complaint presented a possible claim of a relationship between Insured and Santa Fe such that Insured had an implied contractual indemnification obligation to Santa Fe. Relying on *Indemnity* and *Zidell*, the court decided that such liability would be excepted from the exclusion, and hence covered by the policy.

Thus there is some authority for the proposition that an Insured's liability to

indemnify the Other Party pursuant to an obligation merely implied by a written contract may constitute, under an insurance policy, liability assumed by the Insured under a written contract.

■ It is clear, under Illinois law, that where a project subject to the Structural Work Act is carried on, several persons may, depending upon the circumstances, be deemed to be sufficiently in charge of the work to be held responsible for any failure of compliance with the Act, (e. g., Schroeder v. Braun, 502 F.2d 235 (7th Cir. 1974)) and where one or more of them are held liable for a resulting injury, the Illinois courts recognize an obligation of indemnity in order to impose the ultimate burden on one who was the "active delinquent" in bringing about the injury rather than the "lesser delinquent," who may have been held accountable by the injured plaintiff. Miller v. DeWitt, 37 Ill.2d 273, 226 N.E.2d 630 (1967). Often the Injured Party is the employee of a contractor or subcontractor, not entitled to recover from his employer, who recovers from the owner and others, and they seek indemnity from the employer. Exposure to the liability to indemnify is surely incidental to the performance of the employer's contract. If events occur so that such liability is imposed on him, is it a "liability assumed by him under [the] contract" within the meaning of the insurance policy?

A question for which we find no clear answer in Illinois decisions is whether the obligation to indemnify is imposed as a common law device to serve state policy or arises from a promise implied in any contract in which the parties did not otherwise provide, though free to do so.

One reason for thinking that the Contractor's obligation to indemnify does not rest on an implied promise is that to some extent, at least, the active-passive indemnity rule is applied to tort-feasors who had been strangers as well as to parties to a contract. In Sargent v. Interstate Bakeries, Inc., 86 Ill.App.2d 187, 229 N.E.2d 769, 774, a case of injury produced by the conduct of two automobile operators, the court explained:

"To alleviate the harsh results that would be caused by the uniform refusal to allow contribution, the courts of Illinois have developed indemnification as an exception to the rule. [Citations omitted.] At common law the cases in which indemnity was allowed involved a defendant held liable without personal fault, typically master-servant cases and cases where the defendant was subject to a nondelegable duty. Due to the restrictions on the right to contribution, indemnity was expanded to allow recovery to a party not completely free of fault. [Citations omitted.] Our courts now permit one tortfeasor to recover from another if there is a qualitative distinction between the negligence of the two. As it is commonly stated, a passively negligent tortfeasor may obtain indemnification from an actively negligent tortfeasor." Reynolds v. Illinois Bell Telephone Co., 51 Ill.App.2d 334, 201 N.E.2d 322 (1964). In Muhlbauer v. Kruzel, 39 Ill.2d 226, 234 N.E.2d 790 (1968), however, the Supreme Court of Illinois, although citing Sargent for the proposition that "The doctrine of implied indemnity has been utilized to mitigate the harsh effects that could result from an inflexible application of this judicially created bar to contribution [between joint tort-feasors]," 229 N.E.2d p. 792, decided that a particular third-party complaint was properly dismissed, and that there must be, between the alleged indemnitee and indemnitor, "some relationship upon which a duty to indemnify may be predicated." See Drozdzik, Implied Indemnity as a Substitute for Contribution between Joint Tortfeasors, November 1974, Illinois Bar Journal, 142.

■ Another reason for thinking that the obligation is a rule of policy is that the context of the active-passive test itself, since it depends on relative fault, so suggests. Moreover, it appears that the parties may only contract for a different test by an express indemnity provision, which in turn is subject to careful scrutiny and strict construction if one party

agrees to take responsibility for another's negligence. DeTienne v. S. N. Nielsen Company, 45 Ill.App.2d 231, 195 N.E.2d 240, 242 (Appellate Court of Ill. 1963).

The Illinois courts have often referred to the obligation to indemnify under the Structural Work Act in common law or tort liability terms, although some of the same decisions have described the obligation as contractual.

A statement of the Supreme Court of Illinois in John Griffiths & Son Co. v. National Fireproofing Co., 310 Ill. 331, 141 N.E. 739 (1923) is generally regarded as the starting point. In this case defendant subcontractor had expressly promised to indemnify the contractor and owner for loss occasioned by defendant, and the central question was whether the promise was against public policy because the indemnitee was also in violation of the Structural Work Act. In upholding the promise to indemnify, the Court said, in language suggesting a rule of policy: "The general rule is that, where two parties acting together commit an illegal or wrongful act, the party injured may hold both responsible for the damages resulting from their joint act, and neither can recover from the other the damages he may have paid, or any part of them. The further general principle is announced, however in many cases, that where one does the act which produces the injury, and the other does not join in the act, but is thereby exposed to liability and suffers damage, the latter may recover against the principal delinquent, and the law will inquire into the real delinquency, and place the ultimate liability upon him whose fault was the primary cause of the injury." p. 742.

For later decisions dealing with the obligation to indemnify in tort or contract terms, or both, see Moroni v. Intrusion Prepakt, 24 Ill.App.2d 534, 165 N.E.2d 346 (1960); Rovekamp v. Central Const. Co., 45 Ill.App.2d 441, 195 N.E.2d 756 (1964); Parsons v. Kuhne-Simmons Co., 76 Ill.App.2d 121, 221 N.E.2d 168 (1963); Skezas v. Safway Steel Products, 85 Ill.App.2d 295, 229 N.E.2d 781 (1967); Wrobel v. Trapani, 129 Ill.App.2d 306, 264 N.E.2d 240 (1970); Buehler v. Toynan Construction Co., 133 Ill.App.2d 106, 272 N.E.2d 861 (1971), aff'd 52 Ill.App.2d 214, 287 N.E.2d 691 (1972); Gadd v. John Hancock Mutual Life Insurance Co., 5 Ill.App.3d 152, 275 N.E.2d 285 (1971); Gerlach v. Pepper Construction Co., 2 Ill. App.3d 169, 276 N.E.2d 22 (1971); Tiffiny Dec. Co., *supra*. It should be noted that in each case, the particular court was explaining the theory of a rule, and that the choice between a tort or policy principle and a promise to indemnify did not have the kind of significance present here.

In Miller v. DeWitt, *supra*, the Supreme Court of Illinois, citing *Griffiths*, spoke of indemnification of one tortfeasor by another, citing *Moroni*, said "We agree with the rationale of these cases, and thus feel that it is proper to recognize the right of indemnity, even in the absence of a specific agreement providing therefor," and, after referring to the contractor as a possibly "active tortfeasor" agreed with language of *Rovekamp* to the effect that the lesser delinquent "can transfer its statutory liability to the active delinquent, whose dereliction from duty brought about the plaintiff's injury."

In *Wrobel*, the court commented on the language, as follows:

While the opinions in these cases may be subject to the criticism that they employ a mixture of terms from contract and tort law, they are, nevertheless, readily understandable and possible of application. Adhering strictly to contract principles, it may properly be said that an indemnitee cannot obtain redress if his own conduct is sufficient to preclude recovery. But recognition of that rule still leaves us without guidelines necessary to determine the character of such conduct. We believe that the borrowing of the "active-passive negligence" concept from tort law is quite useful in the situation presented by the case now before us. While not satisfying the

legal purist, it does, by fortunate accident, make available a substantial body of case law which deals with the same—or practically the same—facts of conduct which will, or will not, permit recovery. Wrobel v. Trapani, *supra*, 264 N.E.2d at 246–247.

When *Moroni* was decided, the court based its decision in part on an implied warranty theory parallel to Ryan Stevedoring Co. v. Pan-Atlantic Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). There it was held that an agreement to perform stevedoring operations for a shipowner necessarily includes by implication a warranty of unworkmanlike service, resulting in an obligation to indemnify the shipowner if held liable for injury caused by a breach. The agreement involved in *Ryan*, however, is "a maritime contract, governed by federal law . . . in an area where rather special rules governing the obligations and liability of shipowners prevail . . . ." Italia Soc. v. Ore. Stevedoring Co., 376 U.S. 315, 324, 84 S.Ct. 748, 754, 11 L.Ed.2d 732 (1964). Since *Moroni*, it has been held that the *Ryan* implied warranty theory is inapplicable to these building contractor indemnity actions. *Wrobel, supra*, and *Gadd, supra*.

The district court in the case at bar relied on five provisions of the contract which, taken together, required Simmons to furnish scaffolding and barricades required by law and to comply with safety regulations generally.

The district court said, "But Simmons' express promises to abide by such law can have no other interpretation than as an obvious expression of the parties' intent that Simmons would hold the Owners harmless, *i. e.,* indemnify them, should the latter become liable to third parties solely due to Simmons' failure to comply with the law. If the express contractual obligation to comply with the scaffolding act does not mean this, these promises would add nothing to Simmons' statutory duty and would be nothing more than excess and useless verbiage. Because we doubt that Simmons and the Owners intended certain of their con-

tractual clauses to be meaningless and because we believe that the conclusion is inescapable that the parties intended that Simmons would hold the Owners harmless if the Owners became liable to an injured third party solely because of Simmons' failure to comply with the Structural Work Act, we conclude that such an assumption of liability, although not expressly stated, was necessarily part and parcel of this specific contract."

We note from the opinion in Miller v. DeWitt, *supra*, that the contract there under consideration had a clause requiring the contractor to take all safety precautions, but no point was made of it. These provisions in the instant contract require no more than the Structural Work Act required Simmons (and anyone else in charge of the work) to provide. If an injury resulted from noncompliance which was the sole fault of Simmons, an implied promise to indemnify would add nothing, since Simmons would be liable for indemnification without it. If the party seeking indemnity were at fault in any degree, Illinois doctrine with respect to indemnity against one's own negligence would prevent indemnification because the intention was not sufficiently shown. If these provisions could ever be meaningful in providing for indemnity, they could be so only under the limited circumstances where a third party was responsible for all the active fault.

Moreover, in *Skezas, supra*, a provision of the contract making similar requirements of the contractor, and more specifically providing that the safety of all persons employed by the contractor shall be his "sole responsibility," was held not to be a covenant, express or implied, to indemnify the owner, although the court did acknowledge on rehearing that the contractor might be liable for breach of the provision if there were "acts or omissions which were not in compliance with the contract."

■■ In summary, (1) the policy has internal evidence that the assumption of liability to be covered was expected to be found in some portion of a written

contract identifiable as an indemnity provision; (2) the same meaning seems to us to follow most naturally from the language, liability assumed by the insured under any written contract; (3) if the liability to indemnify is not the result of an express promise, but only a consequence of breach of the contract, it would be consistent with the interpretation of similar language in exclusion clauses to hold that the liability was not covered by Coverage Y. As to others than Simmons employees, the liability would then be covered by Coverage A; (4) there is some authority for the proposition that liability to indemnify arising out of a merely implied promise may constitute, under an insurance policy, liability assumed by the insured under a written contract; (5) there is a general rule of construction of an insurance policy in favor of the insured; (6) there is language in Illinois decisions explaining the obligation to indemnify by one actively at fault under the Structural Work Act as an implied promise in his building contract, although there is other language indicating that indemnification is a common law device for shifting the burden of liability for a statutory violation to the person most actively delinquent; (7) the district court's reasoning that a promise to indemnify is implied by a promise to furnish safety precautions required by the Act is plausible but there is an Illinois decision appearing to hold otherwise.

Giving consideration to all the foregoing factors, we choose the construction of the policy language which seems to us the most natural, that is that there must be a portion of a written contract identifiable as an indemnity provision in order for liability to be deemed assumed under a written contract, and covered. Furthermore, it seems to us that the Illinois courts would probably hold, if confronted with our question, that entering a construction contract which will be subject to the Structural Work Act is not an assumption of liability under the contract within the meaning of Coverage Y.

The judgment appealed from is reversed and the cause remanded with directions to enter judgment for defendant.